No. 61.—W. DOUGHERTY and others, plaintiffs in error, *vs.* B. W. WALKER and others, defendants in error..

[1.] Where an executor, who resides out of the State, and is insolvent, and is seeking, by the aid of our Common Law Courts, to get possession of a fund belonging to the estate, which it is apprehended, will be wasted or misapplied, a Court of Equity will, by process of injunction, restrain him from further prosecuting his proceedings at Law, until he voluntarily comes in and submits himself to the jurisdiction of the Court, to a bill filed by the creditors, for the protection of the fund..

In Equity, in Muscogee Superior Court.    Decision by Judge CRAWFORD, February Term, 1854.

In 184—, James C. Watson died, leaving a considerable estate, both real and personal, including a claim against the Government of the United States, at that time unadjusted.    He was largely indebted, at the time of his death, by judgment and otherwise.    Two of the executors named in his will, viz: John A. Watson and Benj. W. Walker, qualified as such, and became possessed of the large estate.    The executors, shortly thereafter, entered into a fraudulent combination, with Daniel McDougald and others, to defraud the creditors of the estate, and to divide among themselves, the whole of the said property.

A motion was subsequently made before the Ordinary, to remove Watson from his office, as executor, which was done by the order of that Court.    A rule was also passed, requiring Walker to show why he should not be removed, also, on the ground of his removal beyond the limits of this State.    No cause being shown, Walker was removed, on that ground, and M. Torrance appointed administrator, *de bonis non, cum, &c.*

In 1852, the claim against the General Government having been allowed, and ordered to be paid to the "legal representative" of James C. Watson, Walker moved, in the Court of Ordinary, to rescind the order removing him—for the reason, that the ground for such removal was insufficient, in law.    He also moved to revoke the letters granted to Torrance, which was

subsequently done. The former order was refused by the Ordinary, and Walker appealed. The Superior Court affirmed the decision of the Ordinary; but upon appeal to the Supreme Court, this decision was reversed.

W. Dougherty and others, creditors by judgment, of James C. Watson, before such judgment of reversal was executed, filed their bill in Equity, charging the foregoing facts, among others; and farther, that Walker was "utterly and hopelessly insolvent", large judgments against him standing open and unsatisfied. That Walker was endeavoring to be restored to the executorship, simply for the purpose of receiving from the Government of United States, the amount allowed for said claim, viz: $25,000, in order to defraud the creditors. In fact, that he had repeatedly and openly declared, that they never should have any portion thereof, unless they would agree to release a moiety thereof to him or his family. That Walker refused to come within the limits of the State, or otherwise submit himself to the jurisdiction of the Courts of the State; and consequently, could not be made to give security for the faithful discharge of his duty. That so soon as restored, he will receive the fund, before the Ordinary could proceed to dismiss him from his office. The bill prayed an injunction, restraining Walker from prosecuting his application, to be restored as executor, until he should submit himself to the jurisdiction of the Courts, and for general relief.

On motion to dissolve this injunction, the Court below dissolved the same, except so far as to restrain Walker from applying for or receiving the fund from the General Government.

To this decision, modifying the injunction, complainants excepted.

Judge BENNING having been formerly of counsel in this case, did not preside.

DOUGHERTY for plaintiffs in error.

INGRAM, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] All the objections urged against the relief prayed for, in this bill, may be reduced to one—and that is, that Equity has no jurisdiction.

Here is a trust fund, to be administered by the executor of the will, for the benefit of the creditors of the estate of General Watson. The executor is an officer of the Ordinary, and accountable to that tribunal, for his conduct. And to authorize a Court of Chancery to interpose, requires a strong case. Does the bill filed by the creditors, contain such charges as to justify the exercise of the extraordinary power which it invokes?

Now, if it could be shown that it was competent for the Ordinary, or any other Common Law Court, to protect the fund, the loss of which is menaced, the complainants would be remitted to that forum. But counsel for the defendant in error, have wholly failed to suggest any means by which this could be done. None has occurred to this Court. True, the Ordinary can compel an insolvent executor, who is likely to waste or mismanage an estate, to give security. But the party in default must first be cited, and thirty days must necessarily intervene, before the Court can act. In the meantime, however, the mischief has been done; the fund has been squandered by the irresponsible representative. In every case, to make the remedy, by injunction, effectual, it must be moulded according to the exigency of the particular facts.

Here, the executor who is seeking to get the possession of this fund, resides out of the State. He is utterly insolvent, as the bill alleges. Jurisdiction cannot be acquired over his person, under the bill, for he cannot be personally served. Should he be allowed to obtain this advantage, by prosecuting his suit at Law, in this State, while he refuses, voluntarily, to submit himself to its Equity jurisdiction, in relation to the same cause, and the same subject-matter?

Did Mr. Walker live within our limits, he could be reached and restrained, in relation to this fund. Residing, as he does,

abroad, does courtesy require that he should occupy any better situation? We must love our neighbors *as*, not *better*, than ourselves.

We think the Court of Chancery, by its process of injunction, should compel him to abide by the same measure of justice which would be meted out to him, were he a citizen of the State. This is equality—and equality is equity.